**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------  :
RYAN O'DELL,                                              :
                                                         :
                    Plaintiff,                            :    Case No. 1:22-cv-5001
                                                         :
v.                                                       :
                                                         :    COMPLAINT FOR VIOLATIONS OF
THERAPEUTICSMD, INC., TOMMY G.                            :    SECTIONS 14(e), 14(d) AND 20(a) OF
THOMPSON, HUGH O'DOWD, ANGUS C.                           :    THE SECURITIES EXCHANGE ACT
RUSSELL, GAIL NAUGHTON, PAUL                              :    OF 1934
BISARO, COOPER C. COLLINS, JULES A.                       :
MÜSING, and KAREN LING,                                   :    JURY TRIAL DEMANDED
                                                         :
                    Defendants.                           :
--------------------------------------------------------  :
```

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against TherapeuticsMD, Inc. ("TherapeuticsMD or the "Company") and the members TherapeuticsMD board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of TherapeuticsMD by affiliates of EW Healthcare Partners ("EW Healthcare").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on June 13, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Athene Merger Sub, Inc., a wholly owned subsidiary of Athene Parent, Inc., will merge with and into TherapeuticsMD, with TherapeuticsMD continuing as the surviving corporation and as an indirect, wholly owned subsidiary of EW Healthcare (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 2, 2021 (the "Merger Agreement"), each TherapeuticsMD common share issued and outstanding will be converted into the right to receive $10.00 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of TherapeuticsMD's outstanding common stock and will expire on July 5, 2022 (the "Tender Offer").

3.      Defendants have now asked TherapeuticsMD's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) TherapeuticsMD's financial projections relied upon by the Company's financial advisor, Greenhill & Co., LLC ("Greenhill"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Greenhill. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as TherapeuticsMD stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.     It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TherapeuticsMD's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of TherapeuticsMD common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Tommy G. Thompson has served as a member of the Board since May 2012 and is the Company's Chairman of the Board.

11.     Individual Defendant Hugh O'Dowd has served as a member of the Board since November 2021 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Angus C. Russell has served as a member of the Board since March 2015.

13.     Individual Defendant Gail Naughton has served as a member of the Board since March 2022.

14.     Individual Defendant Paul Bisaro has served as a member of the Board and since March 2022.

15.     Individual Defendant Cooper C. Collins has been a member of the Board since February 2012.

16.     Individual Defendant Jules A. Müsing has served as a member of the Board since May 2013.

17.     Individual Defendant Karen Linghas served as member of the Board since April 2022.

18.     Defendant TherapeuticsMD is incorporated in Nevada and maintains its principal offices at 951 Yamato Road, Suite 220, Boca Raton, Florida 33431.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "TXMD."

19.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

21.    TherapeuticsMD operates as a women's healthcare company in the United States. The company offers IMVEXXY for the treatment of moderate-to-severe dyspareunia; BIJUVA, a bio-identical hormone therapy combination of 17ß-estradiol and progesterone for the treatment of moderate-to-severe vasomotor symptoms; and ANNOVERA, a ring-shaped contraceptive vaginal system. Its preclinical projects include the development of TX-005HR, a progesterone-alone transdermal cream; TX-006HR, an estradiol and progesterone transdermal cream; TX-007HR and TX-008HR, which are transdermal patch product candidates; and TX-009HR, an oral progesterone and estradiol formulation. It also manufactures and distributes branded and generic prescription prenatal vitamins under the vitaTrue, vitaPearl, vitaMedMD, and BocaGreenMD Prena1 brands. The Company sells its prescription pharmaceutical products and prenatal vitamin products to wholesale distributors and retail pharmacy distributors. TherapeuticsMD was founded in 2008 and is headquartered in Boca Raton, Florida.

22.    On May 31, 2022, EW Healthcare and the Company announced the Proposed Transaction:

> BOCA RATON, Fla.--(BUSINESS WIRE)--TherapeuticsMD, Inc. (NASDAQ: TXMD) ("TherapeuticsMD," "TXMD" or the "Company"), an innovative, leading women's healthcare company, today announced that it has entered into a definitive merger agreement to be acquired by an affiliate of EW Healthcare Partners, a private equity firm dedicated to making investments in rapidly growing healthcare companies.
>
> Under the terms of the transaction, which has been unanimously approved by TXMD's board of directors, EW Healthcare Partners will commence a tender offer to acquire all outstanding shares of TXMD common stock for $10.00 per share in an all-cash transaction, followed immediately by a merger. The purchase price represents a premium of 367.3% over TherapeuticsMD's closing share price on May 27, 2022.

"We are very pleased to enter into this agreement with EW Healthcare Partners," stated Hugh O'Dowd, Chief Executive Officer of TherapeuticsMD. "Together, we will continue empowering women of all ages through a therapeutic focus in family planning, reproductive health, and menopause management. We have a deep appreciation for EW Healthcare Partners's depth of expertise and track record and know they will bring an incredible value of knowledge and strategic guidance."

EW Healthcare Partners is one of the largest and oldest private healthcare investment firms with over $4B of capital raised since its inception. EW Healthcare Partners has made investments in over 150 rapidly growing healthcare companies in the pharmaceutical, medical device, diagnostics, and technology-enabled services sectors in the United States and in Europe.

"We are pleased to welcome TherapeuticsMD to the EW Healthcare Partners portfolio and are deeply committed to the Company's mission of advancing women's health. EW Healthcare Partners has already made a significant investment in women's health through its acquisition of Majorelle. TherapeuticsMD represents a unique opportunity for Majorelle to enter the US market and is a perfect fit with our ambitious plans to create a fast-growing, premier trans-Atlantic women's health platform. We bring an extensive network and capital to fund the further growth of the combined company," said Evis Hursever, Managing Director at EW Healthcare Partners.

"We look forward to working together with the company's management team to enhance the patient experience, improve operational efficiency and create one of a very few trans-Atlantic specialty pharma companies dedicated to women's health," said Olivier Bohuon, Senior Adviser with EW Healthcare Partners and Chairman of Majorelle.

**Transaction Details**

The transaction, which has been unanimously approved by TherapeuticsMD's Board of Directors, implies a total enterprise value for the Company of approximately $177 million and will be structured as an all-cash tender offer to acquire all issued and outstanding shares of TherapeuticsMD common stock, followed immediately by a merger.

Under the terms of the agreement, an affiliate of EW Healthcare Partners will commence a tender offer to acquire all issued and outstanding shares of TherapeuticsMD common stock at a price of $10.00 per share. The tender offer will initially remain open for 20

business days from the date of commencement of the tender offer, subject to extension under certain circumstances.

The price represents a 367.3% premium over TherapeuticsMD's closing share price of $2.14 on May 27, 2022 and a premium of 211.8% to TherapeuticsMD's 30-day volume weighted average share price on May 27, 2022.

Following a successful completion of the tender offer, including meeting certain conditions, the EW Healthcare Partners affiliate will acquire all remaining untendered shares of TherapeuticsMD common stock at the same price of $10.00 per share through a second step merger.

In connection with entering into the transaction, the lenders and administrative agent under the Company's Financing Agreement with Sixth Street Partners have agreed to extend the maturity date of the Financing Agreement to July 13, 2022, allowing the Company to complete the transaction with EW Healthcare Partners on or before that date. In addition, the lenders and administrative agent have agreed to roll-over the Company's indebtedness under the Financing Agreement in connection with, and conditioned on, the closing of the merger.

Closing of the tender offer and merger are subject to certain conditions, including that a majority of the shares of TherapeuticsMD's common stock are tendered and not withdrawn in the tender offer, that there is no default or event of default under the Company's Financing Agreement, and other customary closing conditions. Upon completion of the transaction, TherapeuticsMD will become a privately held company and shares of TherapeuticsMD's common stock will no longer be listed on any public market. The parties anticipate that the combination will be completed on or before July 13, 2022.

**Advisors**
Greenhill & Co., LLC is serving as financial advisor and DLA Piper LLP (US) is serving as legal counsel to TherapeuticsMD.
EW Healthcare Partners was advised by Kirkland & Ellis (Legal), PwC (financial and tax) and BCG (commercial).

\* \* \*

23.     It is therefore imperative that TherapeuticsMD's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24.     On June 13, 2022, TherapeuticsMD filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

25.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the financial advisors, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning TherapeuticsMD Financial Projections*

26.     The Solicitation Statement fails to provide material information concerning financial projections by TherapeuticsMD management and relied upon by Greenhill in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the

rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Greenhill with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that TherapeuticsMD management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Solicitation Statement not misleading.

31.     The Solicitation Statement also fails to provide what the risk and probability adjustments were assumed and applied for the purposes of preparing the Projections.

32.     As indicated on page 26 of the Solicitation Statement, the Projections "reflect a risk-adjusted outlook, based on certain internal assumptions prepared by TherapeuticsMD management…" but the Solicitation Statement does not explain why only risk-adjusted figures are disclosed.

*Omissions and/or Material Misrepresentations Concerning Greenhill's Financial Analysis*

33.     With respect to Greenhill's *Selected Comparable Company Analysis*, the Solicitation Statement fails to disclose: (i) the individual financial metrics for each of the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

companies observed by Greenhill in its analysis; and (ii) the number of fully-diluted outstanding shares of Company stock as of July 30, 2021.

34.    In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for**
**Violations of Section 14(e) of the Exchange Act**

35.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

37.    Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

39.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

40.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

41.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

43.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

46.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

47.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT III**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of TherapeuticsMD within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of TherapeuticsMD, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TherapeuticsMD, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TherapeuticsMD, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

53.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 15, 2022                               **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Floor
New York, New York 10036
Tel: (212) 382-4620
Email:  gloria@melwanichan.com

*Attorneys for Plaintiff*